UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A CORP. DBA ROOTER MAN )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>JOANNE ZHANG & DING HUG SANG )<br>DBA EFFICIENT SEWER & DRAIN )<br>CLEANING, INC. )<br>)<br>Defendants )<br>) | CIVIL ACTION NO.<br>16CV10530 |

## **MEMORANDUM OF PLAINTIFF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION**

NOW comes Plaintiff A Corp d/b/a Rooter Man ("Plaintiff") and respectfully submit this memorandum of laws in support of its Opposition to Defendants' Motion to Dismiss and to Compel Arbitration. As grounds, Plaintiff states: (1) the franchise agreement allows it to bring the underlying trademark infringement action in court against Defendants for unauthorized use of Plaintiff's trademarks; and (2) Defendants have no right to use A Corp.'s federally registered trademarks of Rooter Man and Sewer Man after the termination of their franchise agreement.

## FACTS

### I.     Relationship of the Parties

Defendants Joanne Zhang and Ding Hug Sang d/b/a Efficient Sewer & Drain Cleaning, Inc. ("Defendants") entered into a Rooter Man Franchise Agreement (the "Franchise Agreement") with a commencement date on May 15, 2012 and an expiration date on May 15, 2017. The Agreement granted Defendants' right to use A Corp.'s federally registered trademark Rooter Man in Queens and Kings of New York.

1

## II.     The Franchise Agreement was Terminated

Defendants stopped their franchise royalty payments from August of 2014 and forward.  See Affidavit of Donald MacDonald ("MacDonald Aff.") ¶4.  Regardless of A Corp.s' multiple notices to Defendants and demands of payment, Defendants did not make any further payment to bring their franchise account current. See Macdonald Aff. ¶5. On or about January 23, 2015, Defendant Zhang emailed A Corp. indicating Defendants' intent to terminate their Franchise Agreement stating that they "canceled" their Rooter Man franchise.  See Exhibit A. On January 29, 2015, A Corp.'s offered Defendants several options for them to voluntarily terminate the franchise agreement, to which Defendants failed to timely respond.  See Exhibit B. On or about March 19, 2015, A Corp. through its counsel sent Defendants a letter notifying them of their default and demanded cure within 30 days under the terms of the Agreement with warning of termination of the franchise agreement.  See Exhibit C.  Defendants failed to cure the non-payment default within the 30 days and therefore, the Agreement was terminated at the end of 30 days pursuant to the letter and the Agreement Paragraph 15.2.  See Exhibit D.

Subsequent to the receipt of A Corp. counsel's letter of March 19, 2015, Zhang contacted A Corp. to negotiate for a settlement and requested that A Corp. waive multiple contractual obligations and fees. See Macdonald Aff. ¶12 & Exhibit E.  To compromise for an amicable resolution, A Corp. agreed to accept a payment that was less their contractual obligated amount with certain conditions which Zhang must comply with including without limitation that they must de-identify themselves as Rooter Man. See Macdonald Aff. ¶13.  On or about April 10, 2015, A Corp. sent Defendants a Termination Agreement and Release containing the settlement terms to Defendants.  See Exhibit F.  Defendants' former licensed territory was sold to the current Rooter Man franchisee.  A Corp. also removed any and all Rooter Man listing that

A Corp. created for Defendants from A Corp.'s website at www.rooterman.com.  See Macdonald Aff. ¶17.

### III.   Defendants Continued Using A Corp.'s Trademark Subsequent to the Termination of the Franchise Agreement.

Defendants failed to comply the de-identification requests under the Agreement and as A Corp. demanded subsequent to the termination of the Agreement.  Their internet advertisements as Rooter Man are still active with their contact phone numbers listed.  See Exhibit G.

Additionally, Zhang incorporated several companies using A Corp.'s trademarks, which is expressly prohibited in Paragraph 8.2 of the franchise agreement.  All trademarks that belong to A Corp. were disclosed in the franchise agreement.  During my communications with Defendants, from April of 2015 to January of 2016, it was discovered that Defendants used A Corp.'s federally registered Rooter Man and Sewer Man trademarks to incorporate at least three companies: AAA Rooter Man LLC, ROOTER-MAN OF NYC INC, and AAA Sewerman, Inc.  See Exhibit H.  A Corp. contacted Defendants upon numerous times demanding changing of the companies' names. Defendants failed to cooperate.  See Macdonald Aff. ¶20.  A Corp. sent Defendants a cease and desist letter dated October 13, 2015.  Defendants did not respond.  See Exhibit I.

In or around January of 2016, the current Rooter Man franchisee complained to A Corp.'s of Defendants' continuous use of the Rooter Man trademark in the same area and Defendants told the current franchisee that he did not have the rights to use the Rooter Man brand in Queens of New York.  See Macdonald Aff. ¶22.  On or about January 6, 2016, Mr. Donald Macdonald, the president of A Corp. had telephone conversation with Defendants and sent Defendants a faxed notice demanding them to change their name by removing Rooter Man trademark from their internet advertisements and companies' names.  See Macdonald Aff. ¶23 & Exhibit J.

Regardless of Defendants' promise to comply, they failed to do so.  It was noticed, however, Defendants replaced one of their Rooter Man listing with Sewerman, which is A Corp.'s federally registered trademark too.  See Macdonald Aff. ¶25.

### IV.    Franchise Agreement Terms Governing Dispute Resolution and Termination

Dispute over trademark infringement is not limited by arbitration clause, see Exhibit K:

> **19.7 MEDIATION AND ARBITRATION.  A CORP**. and **FRANCHISEE** agree as a condition to this Agreement to engage in mediation and arbitration prior to the commencement of any court action, <u>except as set forth in Section 19.7 H</u>.
> …
>
> **19. G:**
> A CORP. and FRANCHISEE agree that <u>no action (whether for arbitration, damages, injunctive, equitable or other relief, including but not limited to rescission)</u> will be maintained … unless brought before the expiration of the earlier of 1 year after the date of discovery of the facts resulting in such alleged liability or obligation or 2 years after the date of the first act or omission giving rise to such alleged liability or obligation…
>
> **19.7 H**:
> <u>The obligation to arbitrate or mediate shall not be binding upon either party with respect to claims relating to A CORP.'s trademarks, service marks, patents or copyrights</u>; request for temporary restraining orders, preliminary injunctions or other procedures in a court of competent jurisdiction to obtain interim relief when deemed necessary by such court to preserve the status quo or prevent irreparable injury pending resolution by arbitration of the actual dispute between the parties."

Termination of the Agreement is governed by the Agreement Paragraph15.2, see Exhibit D:

> **"15.2    TERMINATION WITH NOTICE.**
> FRANCHISEE acknowledges that the occurrence of one or more of the events specified in this Section 15.2 would cause harm to the franchise system and thereby lessen its value. Therefore, FRANCHISEE agrees that A CORP., in addition to all other remedies at law or in equity, may terminate this Agreement if FRANCHISEE shall become in default of any provision of this Section 15.2 or any other provision of this Agreement, and if FRANCHISEE shall not cure such default within 30 calendar days for nonpayment of monies, or for other defaults after receipt of a written notice to cure from A CORP., or for a longer period if so mandated by the laws of the state in which FRANCHISEE operates…"

# ARGUMENT

Defendants' Motion should be denied because: (1) the franchise agreement allows it to bring the underlying trademark infringement action in court against Defendants for unauthorized use of Plaintiff's trademarks; and (2) Defendants have no right to use A Corp.'s federally registered trademarks of Rooter Man and Sewer Man after the termination of their franchise agreement.

**A. The franchise agreement allows it to bring the underlying trademark infringement action in court against Defendants for unauthorized use of Plaintiff's trademarks.**

The courts in this jurisdiction do not interpret individual contract provision in isolation and "rather consider other relevant contract terms." See Jasty v. Wright Medical Technology, Inc., 528 F.3d 28, 35 (1st Cir. 2009); see also McAdams Mutual Life Ins. Co. v. Massmutual, 391 F.3d 287, 299 (1st Cir. 2005). "Terms must be construed together as part of a coherent whole." See Nadherny v. Roseland Property Co., 390 F.3d 44, 49 (1st Cir. 2004).

The franchise agreement terms requiring medication and arbitration to resolve disputes arising out of the franchise agreement performance expressly makes exceptions to claims relating to A Corp.'s trademarks, service marks, patents or copyrights. The franchise agreement Paragraph 19.7H provides that:

> "The obligation to arbitrate or mediate shall not be binding upon either party with respect to claims relating to A CORP.'s trademarks, service marks, patents or copyrights; request for temporary restraining orders, preliminary injunctions or other procedures in a court of competent jurisdiction to obtain interim relief when deemed necessary by such court to preserve the status quo or prevent irreparable injury pending resolution by arbitration of the actual dispute between the parties."

The underlying action was brought against Defendants for trademark infringement based on the grounds that they continued using A Corp.'s Rooter Man and Sewer Man trademarks after

their Franchise Agreement was terminated. As such, A Corp.'s underlying action is not barred by the Franchise Agreement.

Unlike Defendants argued that the interpretation of the languages set forth in Paragraph 19.7 H should limit the scope of A Corp.'s trademark infringement action to injunctive relief only, Paragraph 19.7 H grants A Corp. the rights to bring a legal action in a court in two different scenarios: (1) when claims are relating to A Corp.'s trademarks, services marks, patents or copyrights; and (2) when there is an arbitration pending for parties' actual dispute arising out of franchise performance which would cause irreparable injury. The situations described in provisions subsequent to the semicolon are not limitations on the scope of the claims relating to A Corp.'s trademarks, and/or service marks.

Furthermore, parties' intent of choices of different legal actions is also reflected in Paragraph 19.7 G governing the time limitation when a legal action may be brought by either party:

> A CORP. and FRANCHISEE agree that <u>no action (whether for arbitration, damages, injunctive, equitable or other relief, including but not limited to rescission)</u> will be maintained … unless brought before the expiration of the earlier of 1 year after the date of discovery of the facts resulting in such alleged liability or obligation or 2 years after the date of the first act or omission giving rise to such alleged liability or obligation…"

Here, arbitration is listed equally with other actions for damages, injunctive, equitable or other relief. As such, the underlying trademark infringement action seeking injunctive relief and monetary damages are not barred by the Franchise Agreement. Accordingly, Defendants' Motion should be denied.

### B. Defendants have no right to use A Corp.'s federally registered trademarks of Rooter Man and Sewer Man after the termination of their franchise agreement.

Under the Franchise Agreement Paragraph 15.2, A Corp. has the right to terminate the franchise agreement for cause so long as A Corp. gives the franchisee a 30-day notice to cure and the franchisee fails to comply.  Under such terms, on or about March 19, 2015 A Corp. sent Defendants' a default letter notifying Defendants of their non-payment default and demanding that Defendants to cure their non-payment default.  Said letter warned Defendants that their Franchise Agreement would be terminated if they fail to cure the default within 30 days.  Such notice is clear and sufficient.  See Jasty, 528 F.3d 28, at 36 (notice must state with reasonable certainty the essential facts required by law or by contract).  As such, there can be no confusion on the part of Defendants that their Franchise Agreement would be terminated by the end of 30 days if they failed to pay for the entire contractual amount owed.

Parties negotiated a settlement upon termination and for the efficiency, A Corp. agreed that Defendants would pay less than the amount they owed with condition including without limitation Defendants' obligation to de-identify themselves as Rooter Man and cease the use of the Rooter Man / Sewer Man name and trademarks.  The settlement terms were set forth in a Rooter Man Franchise Termination and Release, which were sent to Defendants for execution and comply.  However, A Corp. did not receive executed Termination and Release from Defendants.  Defendants did not pay the full amount owed under the Franchise Agreement to reinstate their rooter Man franchise.

Furthermore, the Franchise Agreement was terminated by Defendants' own action. Defendants stopped royalty payment in August of 2014.  In January of 2015, Defendants contacted A Corp. expressing their intent to terminate the Franchise Agreement.  When they received A Corp.'s default letter in March of 2015, they contacted A Corp. to negotiate a

7

settlement upon termination.  They made settlement payment as parties agreed, but failed to comply with de-identification requirements in the settlement agreement.

Accordingly, Defendants' argument that their Franchise Agreement was still active just because the settlement agreement upon termination was not executed should not prevail because the Franchise Agreement as results of Defendants' failure to cure non-payment default within 30 days of notice and their own action to actively terminate the Franchise Agreement.

## CONCLUSION

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss and to Compel Arbitration and enter such other order as it deems proper.

>Respectfully Submitted
>A Corp d/b/a ROOTER MAN
>By its attorney,
>
>/s/ Juan Liu_____
>Juan (Jenny) Liu, BBO# 655921
>P.O. Box 290
>N. Billerica, MA 01862
>Tel: (978) 670-0718
>Fax: (978) 663-0061
>Email: lj@jennyliulaw.com

Date:   May 9, 2016

## CERTIFICATE OF SERVICE

       I hereby certify that the above document filed through the ECF system shall be sent electronically to the registered participants as identified on the Notice of Electronic Filing and a true copy of the documents will be sent to the attorney of record for each other party by first class mail stamp pre-paid on this 9th day of May, 2016.

/s/ Juan Liu  
Juan (Jenny) Liu

Date:   May 9, 2016